IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOSEPH MANUEL ORTIZ,

    Petitioner,                        No. 2: 11-cv-1593 JAM GGH P

    vs.

ROBERT H. TRIMBLE, Acting Warden,

    Respondent.                  FINDINGS & RECOMMENDATIONS
_____/

**INTRODUCTION**

        Petitioner, a state prisoner proceeding pro se, has filed a petition pursuant to 28 U.S.C. § 2254. Petitioner challenges a judgement of conviction entered against him on October 23, 2008, in the Sacramento County Superior Court for possession of a sharp instrument while incarcerated in a penal institution for which he was sentenced to a prison term of 25 years to life.

**BACKGROUND**

        The relevant facts of petitioner's crime were summarized in the unpublished opinion of the California Court of Appeal, Third Appellate District, as follows:

> The prosecution charged defendant with possessing and carrying upon his person a dirk, dagger or sharp instrument, to wit, a metal rod sharpened to a point measuring approximately seven inches long, on January 12, 2007, while confined in a penal institution (§ 4502). [footnote omitted.] The complaint also

1

alleged for sentencing purposes (§§ 667, subd. (b)-(i), 1170.12) two prior serious felony convictions-a 1999 robbery and a 2004 attempted murder (while incarcerated). The prior convictions were bifurcated.

The prosecutor moved in limine to exclude any defense of duress or necessity. Defense counsel said he did not see necessity as a defense at that point. The trial court opined necessity seemed inapplicable, but the court would not curtail the defense from presenting its case.

At trial, a correctional officer testified that, on January 12, 2007, after a search of defendant's cell and person, defendant was placed on a "contraband watch" or "potty watch," the purpose of which was to determine if defendant had hidden contraband in his rectum. Defendant was dressed in special clothing and monitored for at least five hours, until he had a bowel movement, a search of which revealed a wrapped object-a seven-inch blade and handle wrapped in paper towels and cellophane. [footnote omitted.]

Defendant's cellmate, Manuel Perez, testified as a defense witness, that the weapon was his (Perez's). Perez and defendant were members of the same prison gang, but Perez held a position of authority as "squad leader." If a subordinate disobeys an order, and Perez finds the disobedience a threat to the gang, Perez will stab or try to kill the subordinate.

On the day in question, Perez learned his cell was going to be searched by the correctional officers. Because Perez had already hidden gang paperwork in his own rectum, he ordered defendant to hide the wrapped weapon in defendant's rectum. Defendant initially refused. Perez, who also had a razor, threatened to stab defendant. Defendant hid the wrapped weapon in his rectum, and Perez flushed the razor down the toilet. The gang paperwork in Perez's rectum was discovered when he was placed on contraband watch. Perez said he dropped out of the gang shortly after this incident (partly because he expected to be stabbed for losing the gang paperwork if he returned to the cellblock where his gang was housed) and was testifying "Because I feel responsible for Mr. Ortiz being busted with my piece. I, basically, don't believe it should be him on that defendant's chair. I believe it should be me." Perez's expected release date is around 2025 or 2028.

Defendant testified at trial that he is incarcerated for armed robbery; he did have the weapon in his rectum, but it belonged to Manuel Perez, defendant's cellmate of several months. Both were members of the same prison gang, but Perez had a position of authority. Defendant had been a gang member for eight years, since he entered prison.

Defendant testified that, on the day in question, Perez knew their cell was about to be searched and told defendant to "hoop" the wrapped knife, i.e., to hide it in defendant's rectum. Defendant said no. Perez told him again. Defendant again said no. Perez threatened defendant with a razor, and defendant gave in.

Defendant testified that when he initially refused to conceal the weapon, Perez "could of [sic] tore me up right then and there, but he didn't. And then when I refused again, that's when he-that's when-that's when he was right there, and I'm facing that, and I can't-I have to break it down, so I had to go with it."

Defendant testified:

"Q When you were inserting that weapon, did you feel that you had a choice?

"A I didn't have a choice.

"Q Did you feel that if you-if you refused that you would get be [sic] stabbed or killed?

"A I know I was going to get stabbed or killed."

Within the gang structure, Perez was a "squad leader" with authority to order defendant to do things. It was against the gang's "bylaws" for defendant to refuse Perez's order to hide the weapon. The gang adapted its military-type structure from the marines. It would have been inappropriate for defendant to ignore Perez's command, "Because everything we do as an organization behind the walls is based on security measures.... If [weapons and gang paperwork] get into the hand of our enemies, of the administration, the canines, which is the correctional officers, we have serious repercussions" from the gang, most likely "getting whacked."

There was conflicting evidence as to whether defendant or Perez related Perez's threat to defendant when they later quit the gang and were "debriefed" about gang activities by correctional officers.

The trial court was not asked to and did not instruct on necessity as a defense. The court did instruct on duress as a defense, as follows:

"The defendant is not guilty of possession of a weapon in a penal institution if he acted under duress. The defendant acted under duress if, because of threat or menace, he believed his life would be in immediate danger if he refused a demand or request to commit the crime. The demand or request may have been expressed or implied.

"The defendant's belief that his life was in immediate danger must have been reasonable. When deciding whether the defendant's belief was reasonable, consider all the circumstances as they were known to and appeared to the defendant, and consider what a reasonable person in the same position as the defendant would have believed.

"A threat of future harm is not sufficient. The danger to life must have been immediate.

"The People must prove beyond a reasonable doubt that the defendant did not act under duress. If the People have not met this burden, you must find the defendant not guilty of possession of a weapon in a penal institution."

/////

/////

3

> During deliberations, the jury asked for a clear definition of "immediate duress." The court asked whether the jury was asking for further definition of duress or "immediate danger." The jury did not respond and soon thereafter returned a verdict finding defendant guilty of possessing a weapon in a penal institution.
> Defendant admitted the two prior convictions but asked the trial court to dismiss one of the prior conviction allegations under section 1385. The trial court denied the motion. The court sentenced defendant, under the three strikes law, to prison for 25 years to life with the possibility of parole.

Resp't Answer (Doc. No. 25), Ex. A., People v. Ortiz, 2010 WL 1044247, *1-*3 (Cal. App. Unpub. 2010).

## CLAIMS

This action is proceeding on petitioner's original writ of habeas corpus filed June 10, 2011, in which petitioner presents eight grounds for relief. See Doc. No. 1. However, by order filed on July 31, 2012, claims one, three, four, five, and seven were dismissed as unexhausted. See Doc. No. 22. Petitioner's remaining claims, as stated in the aforementioned order, are as follows:

> (2) The trial court violated his due process rights by failing to permit defense argument and give jury instructions concerning a necessity defense theory for which he had supporting evidence.
>
> (6) The state appellate court decision was an unreasonable application of clearly established law with respect to the petitioner's contention that his possession of the weapon was not voluntary.
>
> (8) The judge, rather than the jury, determined the verdict because the court's exclusion of the necessity defense.

See Doc. No. 1, 4-12[1]. Each of these claims relates to the defense of necessity. See Doc. No. 22, 3. As put before the California Supreme Court, the sole issue was framed as follows:

> On the facts of this case and where evidence indicated defendant possessed the weapon solely because of fear of great bodily harm from other inmates if he refused to do so, he was entitled to an instruction on necessity as a defense.

---

[1] Referencing the court's electronic pagination.

Resp't's Lodged Doc. 1, 10. Thus, in essence[2], petitioner's claims presently before the court argue that the trial court erred by failing to give a jury instruction <u>sua sponte</u> on the defense theory of necessity.[3]

## APPLICABLE STANDARDS OF HABEAS CORPUS REVIEW

The statutory limitations of federal courts' power to issue habeas corpus relief for persons in state custody are provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The text of § 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

As a preliminary matter, the Supreme Court has recently held and reconfirmed "that § 2254(d) does not require a state court to give reasons before its decision can be deemed to

---

[2] Petitioner's second and eighth claims, as stated in his petition, partially rely on his contention that during the trial the court prejudicially refused to permit a defense argument on the theory of necessity. However, the state appellate court found that when the prosecutor moved to exclude the defense of necessity, "[d]efense counsel said he did not see necessity as a defense. The trial court opined necessity seemed inapplicable, but the court would not curtail the defense from presenting the case." Doc. No. 25, Ex. A., <u>Ortiz</u>, 2010 WL 1044247 at *2-*3; <u>see also</u> Resp't's Lodged Doc. 4, Reporter's Transcript of Record, 7-10. Because the record clearly establishes that the trial court did not refuse to permit argument concerning the necessity defense, there are no grounds for petitioner's assertion.

[3] Contrary to petitioner's argument in claim two, as stated in his petition, petitioner did not request jury instructions on the necessity defense at his trial. <u>See</u> Doc. No. 25, Ex. A., <u>Ortiz</u>, 2010 WL 1044247 at *6. As such, it is worth noting that the operative petition for a writ of habeas corpus does not designate an ineffective assistance of counsel claim, which was considered by the state appellate court but will not be considered here. <u>See</u> Doc. No. 22, n. 2.

have been 'adjudicated on the merits.'" Harrington v. Richter, 131 S.Ct. 770, 785 (2011). Rather, "when a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Id. at 784-785, citing Harris v. Reed, 489 U.S. 255, 265, 109 S.Ct. 1038 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Id. at 785.

The Supreme Court has set forth the operative standard for federal habeas review of state court decisions under AEDPA as follows: "For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" Harrington, supra, 131 S.Ct. at 785, citing Williams v. Taylor, 529 U.S. 362, 410, 120 S.Ct. 1495 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. at 786, citing Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140 (2004).

Accordingly, "a habeas court must determine what arguments or theories supported or . . could have supported[] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. "Evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.'" Id. Emphasizing the stringency of this standard, which "stops short of imposing a complete bar of federal court relitigation of claims already rejected in state court proceedings[,]" the Supreme Court has cautioned that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id., citing Lockyer v. Andrade, 538 U.S. 63, 75, 123 S.Ct. 1166 (2003).

\\\\\

The undersigned also finds that the same deference is paid to the factual determinations of state courts. Under § 2254(d)(2), factual findings of the state courts are presumed to be correct subject only to a review of the record which demonstrates that the factual finding(s) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." It makes no sense to interpret "unreasonable" in § 2254(d)(2) in a manner different from that same word as it appears in § 2254(d)(1) – i.e., the factual error must be so apparent that "fairminded jurists" examining the same record could not abide by the state court factual determination. A petitioner must show clearly and convincingly that the factual determination is unreasonable. See Rice v. Collins, 546 U.S. 333, 338, 126 S.Ct. 969, 974 (2006).

The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority. Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002). Specifically, the petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, supra, 131 S.Ct. at 786-787. "Clearly established" law is law that has been "squarely addressed" by the United States Supreme Court. Wright v. Van Patten, 552 U.S. 120, 125, 128 S.Ct. 743, 746 (2008). Thus, extrapolations of settled law to unique situations will not qualify as clearly established. See e.g., Carey v. Musladin, 549 U.S. 70, 76, 127 S.Ct. 649, 653-54 (2006) (established law not permitting state sponsored practices to inject bias into a criminal proceeding by compelling a defendant to wear prison clothing or by unnecessary showing of uniformed guards does not qualify as clearly established law when spectators' conduct is the alleged cause of bias injection). The established Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts. Early v. Packer, 537 U.S. 3, 9, 123 S. Ct. 362, 366 (2002).

The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decision. Early, supra, 537 U.S. at 8, 123 S.Ct. at 365. Where the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal court will independently review the record in adjudication of that issue. "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

Finally, if the state courts have not adjudicated the merits of the federal issue, no AEDPA deference is given; the issue is reviewed *de novo* under general principles of federal law. James v. Ryan, 679 F.3d 780, 802 (9th Cir. 2012).

**DISCUSSION**

As previously noted, petitioner claims that the trial court erred by failing to give a jury instruction sua sponte on the defense theory of necessity. Because the California Supreme Court denied review of petitioner's direct appeal and habeas petition without comment, the court looks to the last reasoned decision, the state appellate court's decision, as the basis for the state court's judgment. Shackleford v. Hubbard, 234 F.3d 1072, 1079, n. 2 (9th Cir.2000), citing Ylst v. Nunnemaker, 501 U.S. 797, 803–04, 111 S.Ct. 2590 (1991).

I. State Appellate Court Review

The California Court of Appeal, Third Appellate District, denied petitioner's claim for the following reasons:

> A trial court has no duty to instruct on a defense of necessity, where the evidence is insufficient as a matter of law to satisfy the elements of the defense. (People v. Pepper (1996) 41 Cal.App.4th 1029, 1036.) Where evidence is insufficient as a matter of law to support a defense, counsel does not render ineffective assistance of counsel by failing to request instruction on the defense. (People v. Pope (1979) 23 Cal.3d 412, 425 [defendant must show counsel's performance was deficient].)
> The defenses of necessity and duress are different. (People v. Heath (1989) 207 Cal.App.3d 892, 901.) The duress defense, through its immediacy requirement, negates an element of

the crime-the intent to commit the act; the defendant does not have time to form criminal intent. (Ibid.) "The necessity defense, in contrast, contemplates a threat in the immediate future. [Citation.] The defendant has the time, however, limited, to consider alternative courses of conduct. The defendant has the burden of proving necessity by a preponderance of the evidence." (Ibid.) Necessity does not negate any element of the crime but represents a public policy decision not to punish a defendant despite proof of the crime. (Ibid.)

This court said in People v. Pepper, supra, 41 Cal.App.4th 1029: "To justify an instruction on the defense of necessity, there must be evidence sufficient to establish that defendant violated the law (1) to prevent a significant evil, (2) with no adequate alternative, (3) without creating a greater danger than the one avoided, (4) with a good faith belief in the necessity, (5) with such belief being objectively reasonable, and (6) under circumstances in which he did not substantially contribute to the emergency. [Citations.]" (Id. at p. 1035 [trial court was not required to instruct sua sponte on necessity defense where there was insufficient evidence of necessity].)

Here, the evidence was insufficient to support an instruction on a necessity defense (sua sponte or upon request). Defendant had adequate alternatives. He could have sought protection from correctional authorities, disclosed the threat, or disclosed the weapon once he was separated from Perez. (Defendant testified it took a long time for the bowel movement because the weapon got stuck in his rectum, but still, he did not tell the guards he had it.)

Moreover, maintaining a dangerous weapon in the possession of a ranking gang member in prison creates, rather than alleviates, a dangerous situation. "A jail in which the prisoners could assert a court approved 'right' to possess deadly weapons for protection would be impossible to administer humanely and safely. The very existence of the weapons inevitably invites their use on other inmates and correctional officers. That is why our statutes prohibiting such possession by prisoners have always been construed to be absolute, and to permit no defense based on a claim of protection against future attack. [Citations.]" (People v. Velasquez (1984) 158 Cal.App.3d 418, 422 [necessity defense unavailable to inmate in possession of knife in jail].) The necessity defense "is inappropriate where it would encourage rather than deter violence. Violence justified in the name of preempting some future, necessarily speculative threat to life is the greater, not the lesser evil, particularly in the highly volatile environment of a prison institution." (People v. McKinney (1986) 187 Cal.App.3d 583, 587 [necessity defense was unavailable to prisoner charged with assault].)

Additionally, defendant himself substantially contributed to the situation by being a gang member.

Defendant's opening brief fails to address these points; it speaks only of his asserted fear and immediate threat

9

> (from Perez) versus future threat (from gang retribution), and then argues prejudice. Defendant's reply brief agrees a dangerous situation is created by prisoners maintaining weapons, but he argues (irrelevantly) that he did not possess the weapon for very long. Defendant's reply brief also asserts the alternative of seeking protection from the correctional authorities would have put him in a totally untenable position, making a bad situation worse. However, defendant cites no evidence supporting his argument. Indeed, the evidence suggests the opposite, because Perez testified he dropped out of the gang shortly after this incident, partly because he expected to be stabbed for losing the gang paperwork if he returned to the cellblock where his gang was incarcerated. It thus appears the correctional authorities could have separated defendant from a danger of gang retribution.
>
> Defendant suggests the jury's question during deliberations, about the meaning of "immediate duress" suggests some jurors may have believed defendant was an unwilling participant in concealing the weapon. However, we do not reach the issue of prejudice from instructional error, because no instructional error occurred.
>
> We conclude the evidence of a necessity defense was insufficient as a matter of law, and therefore the trial court was not required to instruct on it sua sponte, and defense counsel did not render ineffective assistance of counsel by failing expressly to request such an instruction.

Doc. No. 25, Ex. A., Ortiz, 2010 WL 1044247 at *7-*12.

II. Standards for the Granting of Habeas Relief for Sua Sponte Instructional Error

"Due process requires that criminal prosecutions 'comport with prevailing notions of fundamental fairness' and that 'criminal defendants be afforded a meaningful opportunity to present a complete defense.'" Clark v. Brown, 450 F.3d 898, 904 (9th Cir. 2006), quoting California v. Trombetta, 467 U.S. 479, 485, 104 S.Ct. 2528 (1984). A challenge to jury instructions does not generally state a federal constitutional claim. See Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983); see also Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985). However, a criminal defendant is "entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." Mathews v. United States, 485 U.S. 58, 63, 108 S.Ct. 883 (1988); see also Potter v. Hornbeck, 469 Fed.Appx. 645, 646 (9th Cir. 2012), cert. denied __U.S.__, 133 Sct. 120 (2012).

\\\\\

"In a collateral attack on a state conviction, the question is whether the instructional error 'so infected the entire trial that the resulting conviction violates due process.'" Potter, 469 Fed.Appx. at 646, quoting Henderson v. Kibbe, 431 U.S. 145, 154, 97 S.Ct. 1730 (1977). "A habeas petitioner must show that the alleged instructional error 'had substantial or injurious effect or influence in determining the jury's verdict.'" Clark v. Brown, 450 F.3d 898, 905 (9th Cir. (2006), quoting Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S.Ct. 1710, (1993). "A substantial and injurious effect means a reasonable probability that the jury would have arrived at a different verdict had the instruction been given." Byrd v. Lewis, 566 F.3d 855, 860 (9th Cir. 2009) (internal citation omitted), quoting Clark, 450 F.3d at 916. In assessing the probability that the jury would have changed its verdict, "we consider: (1) the weight of evidence that contradicts the defense; and (2) whether the defense could have completely absolved the defendant of the charge." Id., citing Beardslee, 358 F.3d at 578.

Also, "[a]n appraisal of the significance of an error in the instructions to the jury requires a comparison of the instructions which were actually given with those that should have been given." Henderson, 431 U.S. at 154. Where such error is the failure to give an instruction, the burden on petitioner is "especially heavy" because "[a]n omission or an incomplete instruction is less likely to be prejudicial than a misstatement of law." Id. at 155; see also Cummings v. Adams, 172 Fed. Appx 188, 189 (9th Cir. 2006).

To the extent that petitioner rests his claim on a duty to give an instruction sua sponte under rules of state law, petitioner has stated no federal claim. See Cummings, 172 Fed. Appx at 189 (petitioner was unable to demonstrate a violation of federal constitutional right that would permit the granting of habeas relief where his claim stated that the trial court failed to instruct the jury sua sponte on a lesser included offense.) Therefore, to violate due process, the impact on the proceeding from the failure to give an instruction sua sponte must be of a very substantial magnitude. See Henderson, 431 U.S. at 155; see also Mancus v. Pope, 2007 WL 1201759, *31 (E.D. Cal. 2007).

### III. Analysis

Again, petitioner claims that the trial court erred by failing to give a jury instruction sua sponte on the defense theory of necessity. The weight of evidence on the record, as put forth by the state appellate court, contradicts the necessity defense. See Byrd, 566 F.3d at 860. The appellate court concluded that substantial evidence did not support the defense of necessity, so an instruction on that theory was unwarranted. Doc. No. 25, Ex. A., Ortiz, 2010 WL 1044247 at *9-*12. The court's finding was based primarily on account of the existence of an alternative path of action which would have averted the necessity. Id. at *10. The court also found that defendant's possession of the weapon created a dangerous situation and that he substantially contributed to the situation by being a gang member. Id. This is an entirely reasonable interpretation of state law, and may not be overturned by this federal court under AEDPA.

Moreover, at petitioner's trial, the jury was instructed on the duress defense. Although as found by the state appellate court, the two defenses have differences, a comparison of the necessity and duress defenses shows that there was little if any significance in the omission of an instruction on necessity defense. See Henderson, 431 U.S. at 154.

Petitioner had a right to argue a necessity defense, but the defense remains circumscribed by state law. Petitioner was required to present sufficient evidence to warrant the necessity instruction for all elements of the state law defense. See Strother v. California, 2006 WL 1795105 (E.D. Cal. 2006). To establish a necessity defense, a defendant has the burden of proving by a preponderance of the evidence that he (1) acted in an emergency to prevent a significant bodily harm or evil, (2) with no adequate alternative, (3) without creating a greater danger than the one avoided, (4) with a good faith belief in the necessity, (5) with such belief being objectively reasonable, and (6) under circumstances in which he did not substantially contribute to the emergency. See Doc. No. 25, Ex. A., Ortiz, 2010 WL 1044247 at *9; see also CALCRIM No. 3403.

At petitioner's trial, after having been instructed on the defense theory of duress, the jury found that the duress defense did not apply to petitioner's crime. A defendant acted under duress if, because of a threat or menace, he reasonably believed refusing an implicit or explicit demand or request to commit a crime would put his or another's life in immediate danger. See CALCRIM No. 3402. Petitioner claims that there is a reasonable probability that the jury would have arrived at a different conclusion had the necessity instruction been given. See Byrd, 566 F.3d at 860. However, in comparing the two defenses, it seems clear that the defense of duress is encapsulated by factors one, four, and five of the necessity defense. A jury that rejected the factual predicates of a duress defense would not conclude, as required for a necessity defense, that petitioner had a good faith belief that his crime was necessary to prevent a greater harm. Nor would that same jury conclude that such belief was objectively reasonable, another required element of a necessity defense.

Petitioner has failed to carry the "exceptionally heavy" burden of establishing that the alleged instructional error "so infected the entire trial that the resulting conviction violates due process." See Potter, 469 Fed. Appx. at 646; see also Henderson, 431 U.S. at 154. He has not shown the decision of the California appellate courts to have been "unreasonable" as previously defined. Thus, this court finds that the denial of petitioner's claim by the California Supreme Court was not an unreasonable application of clearly established Supreme Court authority and did not result in a decision that was based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d).

## CONCLUSION

ACCORDINGLY, the undersigned recommends that petitioner's petition for writ of habeas corpus (Doc. No. 1.) be DENIED on the merits.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file

written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven (7) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 8, 2013

/s/ Gregory G. Hollows
UNITED STATES MAGISTRATE JUDGE

GGH: 33
orti1593.ord.